DECISION
Before this Court is an appeal from a final decision of the Public Utilities Commission Division of Public Utilities and Carriers (PUC), revoking the certificate for the towing of vehicles. Plaintiffs Ken Rocha and Ken Rocha Automotive, Inc., timely appealed. Jurisdiction is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15.
Background
This case began in April of 1992 when the PUC sent plaintiffs a notice of hearing to appear and present evidence and testimony showing why the certificate of public convenience and necessity number MC-1036, issued to Ken Rocha Automotive, Inc. (K.R. Automotive), for transportation of automobiles by tow-away method should not be suspended or revoked. The PUC's investigation was prompted by criminal complaints filed against Kenneth A. Rocha (Rocha), president and vice-president of K.R. Automotive, charging him with possession of stolen vehicles and with driving a vehicle without consent of the owner and with the intent to temporarily deprive the owner of possession. Rocha requested a continuance at the originally scheduled PUC hearing; the PUC denied the continuance, and when Rocha failed to return to the hearing, revoked the certificate. Plaintiffs timely appealed the revocation, and while the appeal was pending, the criminal charges against Rocha were dismissed. Subsequently, the Superior Court considered plaintiffs' appeal and determined that the PUC should have granted Rocha's request for a continuance. The court ordered the PUC to hold a hearing on the merits of the charges against Rocha.
The PUC held hearings January 24 and 25, 1994, and after receiving testimony, issued an order March 3, 1994, that reaffirmed the revocation order previously issued in April 1992.
The testimony and findings of record are as follow. Lieutenant Walter T. Barlow (Barlow), a retired Rhode Island State Police officer, testified that he executed a search warrant at K.R. Automotive in July 1991 based on information that vehicles had been reported stolen but had not been recovered from the lot. During this search he seized twenty-two stolen vehicles, including the Nissan, IROC, and Audi that were involved in the criminal charges against Rocha forming the basis of the PUC investigation. Barlow learned that the Nissan was towed on August 10, 1990, and reported stolen on August 13, 1990, Barlow opined that it was Rocha's fault that it remained on the lot for almost a year, and that Rocha should have done something further to notify the owner or police. Although the tow slip indicated that K.R. Automotive called the police, according to Barlow the Providence Police Department report contained no indication that Rocha notified the police. Barlow further testified that the Nissan, like the IROC and the Audi, showed signs of being stolen because there was no damage to the vehicle or lock, and there was a piece of paper covering the VIN number. Barlow learned the IROC was towed on July 10, 1990, and reported stolen July 9, 1990. Neither the owner nor insurance company had been informed it was on the lot although Rocha did call the Providence police according to the police department report. Barlow stated that the police were not notified that the Audi had been recovered, although Charles B. Rocha, the owner of the car, had been notified. Barlow testified that during a citywide search of 748 vehicles on twelve other lots, fourteen stolen vehicles were recovered, as compared to twenty-two recovered vehicles of the 150 to 160 on Rocha's Providence lot.
Theodore R. Kidd (Kidd), a retired detective lieutenant with the Rhode Island State Police, also testified. He was involved with the investigation of the Ford Tempo that Rocha initially towed on December 4, 1987, and that was reported stolen in Florida in November 1987. Apparently, when Rocha towed the Tempo, it was taken out of the police computer and no longer registered as stolen. In April of 1988, Rocha provided police with the VIN number, and the vehicle came up as stolen. Two months earlier, Orion Insurance Company had settled with the owner of the vehicle and obtained title to the vehicle. After Orion was notified that the vehicle was on Rocha's lot, a dispute arose between Orion and Rocha regarding storage fees. The dispute was still on-going at the time of the PUC hearing. In November of 1988, Rocha's attorney informed Orion that the Tempo had been stolen from Rocha's lot. In February and March of 1992, Rocha was issued a summons for speeding while driving the Tempo.
Rocha testified that in 1987 he was the president and vice-president of K.R. Automotive, and was affiliated with Ken Rocha Auto Body, Ken Rocha Recovery, Inc., and Ken Rocha Auto Sales (K.R. Auto Sales). K.R. Auto Sales, located in South Attleboro, towed in Providence and charged higher storage rates than K.R. Automotive. However, after the PUC asked him to stop using K.R. Auto Sales to tow in Rhode Island, he stopped. However, the Tempo was towed by K.R. Auto Sales, not K.R. Automotive, in December 1987, and Rocha stated he notified the South Attleboro and Providence police departments. At the hearing, Rocha introduced a tow slip from K.R. Auto Sales showing that the Tempo was towed in December 1987. In November 1988 the Tempo was stolen from the South Attleboro lot. When the vehicle was recovered, his attorney notified Orion by a letter dated May 4, 1989. Sometime thereafter, Rocha moved the Tempo to the Providence lot. Regarding the Audi and Nissan, Rocha testified that after he had towed the Audi, he immediately notified his cousin, Charles B. Rocha, who owned the car, and also notified the Providence Police Department. Rocha stated that "we probably notified the police" when the Nissan was towed.
Another witness, Providence Police Sargeant Robert A. Bennett (Bennett), testified that he had investigated the stolen Ford Tempo, and that in July 1990, he received a copy of the South Attleboro police report in which Rocha reported the Tempo as stolen from his lot. Bennett testified that Rocha was removed from the police tow list as a result of the State Police investigation and that Bennett knew of more citizens' complaints against K.R. Automotive than against any other tow company.
In addition to this testimony, the PUC incorporated into its findings evidence from the hearings held in June and July of 1990 concerning written complaints filed by eighteen people, in which the PUC found that plaintiff "has flagrantly abused its regulatory grant of operating authority." The PUC also considered the stipulation Rocha signed on January 10, 1992, and accepted by the PUC to resolve consumer complaints, including that of Orion, which were the subject of hearings in 1990 and 1991. Rocha pleaded nolo contendere to the consumer complaints, received a 75-day suspension, in lieu of which he could pay the cash equivalent of $20,000. He also agreed to a six month probation, during which time the PUC counsel would monitor his compliance with provisions of the Motor Vehicle Code.
Based on this record, the PUC made the following findings: that Rocha concealed a car, i.e., the Tempo, belonging to Orion insurance; that Rocha was in possession of and driving a vehicle without consent of the owner; that Rocha failed to comply with PUC orders by failing to pay an agreed fine; that Rocha violated his probationary period as agreed to in the stipulation by driving a motor vehicle without the consent of the owner; that Rocha violated order No. 13220, effective March 8, 1990, requiring that "towing companies have a responsibility to attempt notification to the owner of a vehicle as to its location and storage fees, within a reasonable time after the tow"; and that Rocha used his Massachusetts company, which was not a regulated carrier in Rhode Island, to tow cars in Rhode Island simply to exact more money from the owners for storage and to avoid PUC oversight. The PUC also found that the evidence did not support Rocha's assertion that the Tempo was stolen from his lot in South Attleboro; rather, Rocha "performed some kind of shell game to conceal the car." Based on these findings, the PUC concluded that plaintiffs violated R.I.G.L. § 39-12-25 and § 39-12-10 by the willful and continued failure to comply with orders, rules and regulations, and the failure to perform in a manner conducive to the public interest. PUC thus revoked the towing certificate.
Standard of Review
The review of a decision of PUC by this court is controlled by R.I.G.L. § 42-35-15(g), which precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. Rhode Island Conflict ofInterest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this court's review is limited to determining whether substantial evidence exists to support the PUC's decision. Newport Shipyard,Inc. v. Rhode Island Commission for Human Rights, 484 A.2d 893, 897 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. The Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court, which may determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458.
Plaintiffs' Grounds for Appeal
Plaintiffs challenge the PUC's decision on several grounds. First, plaintiffs assert the revocation is not supported by the evidence and is excessive. According to plaintiffs, the PUC improperly considered evidence concerning the Tempo because there is no evidence K.R. Automotive towed it. The record supports plaintiffs' contention. Both the towing slip and Rocha's testimony indicate that K.R. Auto Sales, the Massachusetts entity, towed and stored the Tempo. And although Kidd's affidavit states that the vehicle was initially towed to K.R. Auto Sales located on Homestead Avenue in Providence, Kidd stated at the hearing that he relied on the Orion attorney for this information and it was obviously a "misunderstanding." Therefore, Kidd never affirmatively testified that K.R. Automotive towed the Tempo. Thus, this court finds that under § 42-35-15(g), the PUC's findings that the Tempo was not stolen from Rocha's South Attleboro lot and that he "performed some kind of shell game to conceal the car" are totally devoid of competent evidentiary support. See Milardo, 434 A.2d at 272. Likewise, the evidence that Rocha concealed the Tempo and that he drove it without consent of the owner does not constitute sufficient evidence to revoke the towing certificate of K.R. Automotive. See Glass v.State Board of Public Roads, 44 R.I. 54, 59, 115 A. 244, 245-46 (1921) (evidence that Glass was guilty of a single offense of receiving stolen goods not sufficient to support revocation of driver's license).
The same is true of the PUC's finding that Rocha violated the March 8, 1990 order requiring towing companies to attempt to notify the owner. There is sufficient evidence of record that Rocha notified the owner that the Audi and Tempo had been towed. Both Rocha and Barlow testified that the owner of the Audi had been notified. While the PUC could find Rocha's testimony regarding notification of the IROC and Nissan incredible, the record is devoid of competent evidentiary support that plaintiff violated the order with respect to all four vehicles. Thus, plaintiffs' argument that the revocation is excessive and not supported by sufficient evidence has merit.
Plaintiffs also raise several evidentiary objections, claiming that the PUC considered irrelevant, immaterial, or repetitious evidence by relying on previous hearings, which had been reversed by the superior court, and by relying on improper hearsay. Plaintiffs' evidentiary objections lack merit. Under §42-35-10, the PUC shall exclude "[i]rrelevant, immaterial, or unduly repetitious evidence" in contested cases, and shall follow the rules of evidence, "but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted. . . ." There is nothing in the record to suggest that the PUC improperly considered irrelevant, immaterial, or repetitious evidence thereby prejudicing substantial rights of the appellant. And contrary to plaintiffs' assertion, hearsay is admissible in agency hearings. DePasquale v. Harrington, 599 A.2d 314, 316-17 (R.I. 1991).
Next, plaintiffs assert that the PUC hearing officers were biased against Rocha and engaged in prohibited ex parte communications. See § 42-35-13. Specifically, plaintiffs rely on interrogatory answers from a federal court action plaintiffs brought after the PUC revoked the certificate. These interrogatory answers state that Stevenson (the hearing officer) and Adrienne Southgate (the PUC attorney) had several conversations with Richard Patz (the attorney for Orion) regarding the complaints filed by Orion, and that Stevenson was appointed as administrator on all matters relating to plaintiffs. However, Stevenson's affidavit states that in the one conversation he had with Patz, he informed Patz that the police had recovered the Tempo. His affidavit also states that he was not involved in the investigation of the Tempo. A review of the record indicates plaintiffs' argument is without merit.
Finally, plaintiffs allege that the entire record for this appeal has not been provided by the PUC because the record lacks two dockets on which the PUC relied. As this order will be remanded to the PUC for reconsideration in light of this decision, it is not necessary to review this final issue.
Conclusion
After a review of the record, this court is of the opinion that the findings concerning the Tempo and the Audi do not support the PUC's order revoking the certificate. Rather than speculate as to whether the PUC would in its discretion nevertheless revoke the certificate, this court remands the PUC's March 3, 1994 order to the agency for a consideration of whether the certificate should be revoked in light of the evidence contained in the record without the taking of further evidence.See Glass, 44 R.I. at 61, 115 A.2d at 246; Capaldo v. PublicUtilities Hearing Board, 70 R.I. 356, 361, 38 A.2d 649, 652 (1944).
Counsel shall prepare the appropriate judgment for entry.